❑ Original          ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| information associated with the cellular devices assigned call numbers 713-281-2632, that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey | ) ) ) ) ) |

Case No. 23-927M(NJ)

Matter No. 2022R00355

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 5/11/2023 _____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.      xx❑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Nancy Joseph                                        .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued: 4/27/2023 @ 9:48 a.m. _____

*Judge's signature*

City and state:   Milwaukee, WI _____          Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R355**

1.      Records and information associated with the cellular devices assigned call numbers

**713-281-2632** (referred to herein and in Attachment B as "the Target Cell Phone), that is in the

custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Service

Provider"), a wireless communications service provider that is headquartered at 180 Washington

Valley Road, Bedminster, New Jersey.

2.      Information about the location of **Target Cell Phone**, that is within the possession,

custody, or control of Verizon Cellular.

3.      The **Target Cell Phone**.

Case 2:23-mj-00927-NJ   Filed 04/27/23   Page 3 of 63   Document 1

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2022R355**

I.      **Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from March 28, 2023, to present:

   i. Names (including subscriber names, usernames, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Page 52

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

     iii.   Date, time, and duration of communication; and

     iv.   All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, on January 31, 2023, for such information associated with the Target Cell Phone.

    c.   Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

     i.   To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall

compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and possession of a machinegun, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846, have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Antonio E. HOWARD, Tasha M. BROWN, Alexy ROMERO, Devan OWENS, Kemont BOYD, Qian COLLINS and other identified and unidentified subjects during the period of July 1, 2022, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with the cellular devices assigned call numbers 713-281-2632,<br>that is in the custody or control of Verizon Wireless (referred to herein and in<br>Attachment B as the "Service Provider"), a wireless communications service provider<br>that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey | )<br>)<br>)<br>)<br>)<br>)  Case No. **23-927M(NJ)**<br>Matter No. 2022R00355 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 920(o) | Conspiracy to distribute and possess with the intent to distribute controlled substances and possession of a machine gun |
| 21 U.S.C. 841 and 846 | Distribution and possession with intent to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Aaron Hoppe, TFO, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date: __4/27/2023__

_____
*Judge's signature*

City and state:  Milwaukee, WI

Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT
### Matter Number 2022R355

I, Aaron Hoppe, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **713-281-2632**, (the "Target Cell Phone"), whose service provider is Verizon Wireless ("Service Provider") a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The Target Cell Phone are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

Page 1

4. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

5. I have been a law enforcement officer since May 30, 2007. I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau. I have been assigned to a Federal Drug Task Force (Milwaukee HIDTA) and have been assigned to the Waukesha County Metro Drug Unit in 2012-2013, 2015-2017, and from 2022-Present. I have been a part of hundreds of state and federal investigations related to drug activity.

6. I have received extensive training on the investigation of death investigation, narcotics investigation, cell phone analytics, and I am currently a member of the Board of Directors for the Wisconsin Association of Homicide Investigation.

7. I have conducted investigation ranging from death, drug, property, and child exploitative crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims. I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone. I

Page 2

know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos.

8.      I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and has arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 18, United States Code, Section 922(o) and Title 21, United States Code, Sections 841 and 846.  I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

9.      I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

Page 3

10.     I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession firearms trafficking, and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

11.     Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

12.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

13.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and possession of a machinegun, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846, have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Antonio E. HOWARD, Tasha M. BROWN, Alexy ROMERO, Devan OWENS, Kemont BOYD, Qian COLLINS and other identified and unidentified subjects. There is also probable cause to search

the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II. PROBABLE CAUSE

### A. BACKGROUND AND DEBRIEF OF CONFIDENTIAL SOURCES

14.     Beginning in July 2022, Drug Enforcement Agency (DEA) and the Waukesha Metro Drug Unit, hereinafter referred to as "case agents," began investigating an armed drug trafficking organization (ADTO) operating in the Eastern District of Wisconsin (WI) which involves Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Antonio E. HOWARD, Tasha M. BROWN, Alexy ROMERO, Devan OWENS, Kemont BOYD, Qian COLLINS and other identified and unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance case agents have learned this ADTO sells fentanyl, purported to be heroin, methamphetamines, cocaine, ghost guns, and switches (device which converts a semi-automatic firearm into a full-automatic firearm). Case agents also determined that members of the ADTO utilizing multiple residences and multiple vehicles, including rental vehicles, to store and distribute their narcotics throughout the Eastern District of Wisconsin and travel out of state to obtain the controlled substances and firearms.

15.     On July 1, 2022, a Confidential Source (CS) contacted investigators and stated that he/she has knowledge that Azjuan K. MERIWETHER is selling high quantities of heroin, which MERIWETHER told CS is actually "feti, methamphetamine, cocaine, and "ghost" guns which are untraceable along with switches. Based on my training, experience, and investigation into this ADTO, I understand "feti" to mean fentanyl, which was also verified by CS.

16.     CS indicated that he/she knew that MERIWETHER went by the "rapper" name "Chef Don Juan" and had videos posted on YouTube. I reviewed a YouTube video of "Chef Don

Page 5

Juan" and observed an individual identified as MERIWETHER in the video along with two other individuals. Each individual in the video is handling a handgun or weapon, some with an extended magazine clip and one with a drum magazine.

17. CS further indicated MERIWETHER's had a social media account with Instagram and provide an account name of "thereal_chefdon92". Law enforcement observed MERIWETHER's account of "thereal_chefdon92". MERIWETHER's accounts contained several photos, videos, and music videos of himself, consistent with the account in fact belong to MERIWETHER.

18. The CS indicated that he/she has known MERIWETHER for several years. The CS indicated that MERIWETHER had been arrested previously for a heroin related death investigation in Waukesha County, but the case had been dismissed. I confirmed that MERIWETHER was charged in Waukesha County Case 2021CF296 with one count of first-degree reckless homicide on February 17, 2021, but the case was dismissed on July 21, 2021.

19. The CS indicated that MERIWETHER sells guns, including "ghost guns", which based on my training and experience are guns which are purchased pre-assembled and are later assembled and are in fact a functioning weapon, but these pre-assembled weapons do not have serial numbers associated and are untraceable. In addition, CS indicated MERIWETHER sells switches for these guns, which based on my training and experience is a small part that is affixed to the weapon providing automatic fire capabilities on what would normally be a semi-automatic weapon. This provides the individual utilizing the weapon with the opportunity to fire a large amount of ammunition in a short time period.

20. CS stated that MERIWETHER is known to rent hotel rooms in "high class" hotels and use those rooms to cut and package the illegal narcotics that he purchases in large quantities

Page 6

and prepares them for delivery in the area. CS also indicated that there is a "barber shop" in the area of 39th and North in Milwaukee, WI where MERIWETHER and his "crew" of "workers" cut and package illegal narcotics. CS stated that there are a large number of handguns and long guns at the "barber shop" and indicated that the video that was observed on YouTube of MERIWETHER was produced at the "barber shop".

21.    CS stated that on July 1, 2022, he/she had met with MERIWETHER. MERIWETHER was in possession of several hundred grams of heroin/fentanyl and at least one pound of methamphetamine. CS took pictures of the product along with a vehicle operated by MERIWETHER, and the residence where CS met with MERIWETHER.

22.    CS stated that he/she had set up an anticipated transaction of 50 grams of heroin in exchange for $2,500.00. The planned transaction was to take place on July 5, 2022, in the Waukesha County Area. CS indicated that he/she had contacted MERIWETHER's known telephone number 414-999-6172.

23.    I queried 414-999-6172 using a reliable law enforcement database, which identified the mobile provider as T-Mobile.

24.    I also reviewed Wisconsin Department of Transportation (DOT) Photos, Waukesha County Booking photos, and the YouTube video of "Chef Don Juan" and determined the information provided by CS is in fact regarding the subject identified as Azjuan K. MERIWETHER.

25.    CS information is credible and reliable, CS has given information concerning individuals involved in illegal activities which has been independently verified through this investigation. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance.

Page 7

CS is cooperating with law enforcement for consideration on pending criminal drug charges in Waukesha County as well as previous drug charges in Kenosha County. CS has no arrests or convictions relating to dishonesty but has had past arrests or convictions for felony drug offenses and other felony bodily harm offenses.

## B. UNDERCOVER CONTROLLED BUYS WITH THE ARMED DRUG TRAFFICKING ORGANIZATION (ADTO) AND IDENTIFICATION OF MEMBERS

26. Since July 5, 2022, CS and an undercover agent (UC) with ATF engaged in approximately 18 undercover controlled buys with members of the ADTO including Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Laron N. KING and others. Generally, during the controlled buys of controlled substances and/or firearms the CS placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, provide pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions and the target was identified by the CS through photographs and verified by investigators through DOT photographs, booking photos, and social media. Further firearms were also tested by ATF.

27. Between July 2022 and March 2023, CS and/or UC obtained approximately 790 grams of heroin, which some of the substances field tested positive for fentanyl also; 240 grams of methamphetamine; and 155 grams of cocaine from the ADTO during the controlled buys.

Additionally, during 10 of the undercover controlled buys, the UC obtained approximately 20 firearms from the ADTO. Some of the firearms were installed with a Glock auto-sear device (switch), which converts a semi-automatic firearm into a full-automatic firearm, and other times the UC just purchased a Glock auto-sear device. The UC obtained approximately nine Glock auto-sear devices from the ADTO.

28. During the investigation into the ADTO, case agents identified Devan S. OWENS as one of the ADTO's drug sources. Case agents determined this, based on statements made by MERIWETHER, review of court authorized electronic surveillance, jail calls, review of social media and other law enforcement databases. MERIWETHER made comments during undercover controlled buys regarding his "cousin," identified as FRANKLIN, having a drug connection. MERIWETHER also made statements that the "Mexican," identified as Daniel RODRIGUEZ PEREZ, had a drug connection.

29. For example, on October 13, 2022, during a controlled buy for 50 grams of heroin, which tested positive for fentanyl, MERIWETHER discussed purchasing kilograms of heroin from a source in Texas. During this conversation MERIWETHER stated that the "Mexican" has a source in Texas. MERIWETHER confirmed the "Mexican" was RODRIGUEZ PEREZ, aka "RICO."

30. On November 1, 2022, MERIWETHER spoke with CS and indicated MERIWETHER would then travel to Texas with "the Mexican," RODRIGUEZ-PEREZ, or MERIWETHER will meet with a source known by FRANKLIN that has connections in Texas where the ADTO can purchase kilograms of heroin. MERIWETHER explained to CS that CS will be purchasing a quarter kilogram for the $5,000.00. MERIWETHER stated that by the time the ADTO "cut it with fentanyl" upon returning to Wisconsin, CS will receive a kilogram of heroin/fentanyl. MERIWETHER referenced RODRIGUEZ-PEREZ and FRANKLIN as

Page 9

individuals known to be involved with the planned purchasing of kilograms of heroin. MERIWTHER also told the CS that he would travel to either Texas or Tennessee based on supply and would obtain a "kilo" of heroin." MERIWETHER indicated that he would return to Wisconsin with the "kilo" and would "cut it up" with "lactose and fentanyl" and would return a significantly large portion, possibly up to a "kilo" of heroin/fentanyl mixture to the UC and CS after it was "cut up" by MERIWETHER.

31.     On November 16, 2023, MERIWETHER met with CS and the UC regarding the purchase of the kilogram of heroin and an AM-15, Anderson Manufacturing Pistol with serial number 22019470.  During the transaction, MERIWETHER stated that he was planning on leaving for Texas in the next few days to obtain the "bricks" of heroin.  MERIWETHER then asked the UC and CS if they still wanted MERIWETHER to mix it up, which based on MERIWETHER's previously statement and my training and experience meant MERIWETHER would cut the heroin and mix it with lactose and fentanyl.  After completion of the transaction, MERIWETHER exited the UC's vehicle and entered the Equinox and remained in the area for a short period of time.

## C.  ADTO TRIPS TO TEXAS AND IDENTIFICATION OF OWENS

### a.  November 2022 Trip to Texas by MERIWETHER and FRANKLIN

32.     Following this transaction, case agents reviewed court authorized electric surveillance of MERIWETHER's telephone 414-999-6172.  On November 17, 2022, the day following the controlled buy with the UC and CS, MERIWETHER's telephone 414-999-6172 was observed leaving the Milwaukee area and traveling to Indiana.  MERIWETHER's telephone 414-999-6172 remained in the Indiana area until November 21, 2022, when he returned to Milwaukee.

33.     On November 21, 2022, at approximately 5:00 pm case agents observed the black Chevrolet Equinox MERIWETHER used during the controlled buy on November 16, 2022, parked

in front of the 414 Exclusive Clothing Store, located at 5740 West Fond Du Lac Avenue, Milwaukee, WI. During this time, MERIWETHER and FRANKLIN were both observed inside of the store and photographs of both were obtained. MERIWETEHR and FRANKLIN were observed exiting the store and entering the Equinox and leaving the area. Surveillance was then terminated.

34.     On the morning of November 22, 2022, members of the surveillance team were conducting surveillance at the Diamond Inn Hotel, located at 6222 West Fond Du Lac Avenue, Milwaukee, WI. CS previously informed case agents that the ADTO would rent "high class" hotels to cut and package the ADTO's illegal narcotics. Case agents later confirmed through Landmark Credit Union records belonging to Savanna WILLIAMS, that the ADTO would rent hotels. WILLIAMS's Landmark Credit Union records showed multiple charges related to individual hotels and hotels.com website.

35.     In the afternoon of November 22, 2022, MERIWETHER's telephone 414-999-6172 departed the Milwaukee area again and traveled to the Indiana area, where he remained until returning to the Milwaukee area on the early morning hours of November 24, 2022. MERIWETHER's telephone 414-999-6172 remained in the Milwaukee area until November 27, 2022, when he left the area and began traveling south/west until he arrived in the Houston, Texas area on the morning of November 28, 2022. Case agents also observed the court authorized electronic surveillance for FRANKLIN's telephone 414-416-0868 left the Milwaukee area at this same time and traveled to Houston, Texas arriving on November 28, 2022. This movement was consistent with MERIWETHER and FRANKLIN traveling together to obtain controlled substances.

Page 11

36.     Case agents continued to review electronic surveillance of MERIWETHER's telephone 414-999-6172 and FRANKLIN's telephone 414-416-0868. On November 27, 2022, at approximately 3:00 p.m. MERIWETHER's telephone 414-999-6172 began traveling south from Indiana and eventually traveling to the Houston, Texas area where he arrived at approximately 10:00 a.m. on November 28, 2022. MERIWETHER's telephone 414-999-6172 remained in the area of Jersey Village, TX for several hours according, before traveling north before arriving in the Evansville, IN area at approximately 10:30 a.m. on November 29, 2022. FRANKLIN's telephone 414-416-0868 travel was also similar to MERIWETHER's telephone 414-999-6172 during this time frame.

37.     While reviewing the public Instagram account for MERIWETHER, identified as "thereal_chefdon92", MERIWETHER posted several videos on the account on November 28, 2022, which were later learned to be deleted after the 24-hour period elapsed. The first video appeared to have been taken from inside a vehicle. The video had a highway sign, which stated "DALLAS". The camera then panned to the pants pocket of the person taking the video. The pocket is opened and a large amount of what appears to be US Currency is observed inside the pocket. The next video is also taken from inside a vehicle, and it appears the vehicle is stationary, in a parking lot. The camera panned to trees, where several vehicles parked is also seen. All of the vehicles have Texas license plates affixed to them. The next video was taken from what appears to be an angle outside of the vehicle. The camera panned and showed a box which was opened. The box appeared to have several capped bottles inside. The caption stated, "You boys know what time it is no deals on these navy seals either". There also appeared to be at least four unopened boxes in the video which match the opened box.

Page 12

38.     On December 6, 2022, MERIWETHER using 414-999-6172 reached out to the ATF UC directly and agreed to complete the transaction which initially took place on November 16, 2022. MERIWETHER had informed the UC and CS that he was going to travel to Texas or Tennessee to pick up multiple "kilos of heroin." MERIWETHER provided an address to the UC of 5146 North 60th Street, Milwaukee, Wisconsin to meet. The UC and CS subsequently traveled to that location and arrived at 3:21 p.m. The UC identified two vehicles in the driveway of 5146 North 60th Street. A Black Chevy Equinox with Kansas license plate R008676. This is a rental vehicle known to be operated by MERIWETHER, including during the transaction on November 16, 2022. The second vehicle was a Silver/Gray Hyundai Sonata with Wisconsin license plate AFJ-7505.

39.     The UC and CS entered 5146 North 60th Street and met with MERIWETHER who was allegedly alone. MERIWETHER informed the UC that 5146 North 60th Street belonged to his "grandmother" and escorted the UC and CS to the kitchen where the transactions for 233.4 grams of a substance that tested positive for both heroin and fentanyl; an Anderson AM-15, with serial number 19335796; and a Glock 45 9 mm, with serial number BUFB412 with a Glock auto-sear switch installed was completed.

40.     MERIWETHER informed CS and the UC that he intended on traveling back to the Houston, Texas area "next weekend." MERIWETHER talked about how the Houston heroin source "was really my cousin's people." The cousin MERIWETHER is referring to is believed to be FRANKLIN, based on prior references by MERIWETHER identifying "cousin" as FRANKLIN.

41.     MERIWETHER then discussed issues that he had with the rental vehicle, the Equinox, and having to pay extra because the vehicle had been utilized in Texas. MERIWETHER

Page 13

then informed CS that he intended to go back to Texas to obtain "tar," referring to black tar heroin. MERIWETHER stated "I gotta get some tar, that white shit that shit good, but that tar shit, that's…that's the everybody use fent (referring to fentanyl) but tar is real heroin. Everybody gonna like it because its fent and its cooler but when they… when I see people do mixed tar heroin with fent that the best shit ever. I know for a fact."

42.      MERIWETHER then informed the UC and CS that he "stretched out" the heroin, meaning he mixed the original amount he purchased. MERIWTHER then stated that he purchased 100 grams of raw heroin, then mixed it with unidentified substances and increased it to 240 grams. The UC and CS observed blender cups covered in a white powdery substance, and parts belonging to a kilogram heroin/fentanyl press. MERIWETHER then explained that he had stayed up all night mixing the heroin that was provided to the CS and UC. MERIWETHER stated that he had purchased 300 grams of fentanyl from the Houston source when he was in Houston and that he was charged $20,000.00 for a kilogram of heroin. MERIWETHER also informed CS and the UC that he had pints of "promethazine" for "$70.00 a pint." This would be consistent with what was observed on MERIWETEHR's Instagram account, as described earlier.

### b. Identification of OWENS

43.      Based on the investigation into the ADTO, case agent believed that MERIWETHER and FRANKLIN were traveling to Texas to obtain a kilogram of heroin following the November 16, 2022, transaction with CS and the UC. Case agents reviewed MERIWET MERIWETHER's telephone 414-999-6172 during the time MERIWETHER was in the Houston area. Case agents observed one number that was called multiple times while MERIWETHER was in Texas. MERIWETHER's telephone 414-999-6172 had 16 contacts with **713-281-2632** while in Texas. Case agents enter **713-281-2632** into the public search engine of CashApp, given prior

Page 14

transactions with ADTO's members and CashApp.  **713-281-2632** is associated to an individual with the account name "Boozilla" and a username of "$Badazzbacc."  The CashApp profile picture associated with the CashApp account shows an unidentified black male wearing a gray "Hilfiger" shirt with blue athletic shorts.  This information was all publicly viewable.

44.     Case agents then used Instagram search engine, given the ADTO's use of Instagram also to conduct business in the past.  The name "Badazzbacc" was associated with an account linked to "Devan Stevens."  The Instagram profile picture shows the same unidentified black male, wearing the same clothes, but the unidentified male is holding a young girl in his arms.  Though this information located by case agents on Instagram was publicly viewable, "Devan Stevens" Instagram profile is private, so case agents was unable to view any other information associated with the profile.

45.     Case agents then entered "Devan Stevens" into the Facebook search engine and two Facebook accounts for Devan Stevens appeared.  Both accounts appeared to belong to the same person and in one of the Facebook profiles, which is also the one that appears to be the main Facebook profile, the URL shows a name Devan B. OWENS.  In the other Facebook profile for Devan Stevens, the same picture that was observed in "Devan Stevens" Instagram profile picture was observed on the timeline thread posted on October 18, 2022.  While reviewing both publicly accessible accounts, the same male appears as the primary user of both accounts and appears to be the same person in the photos on CashApp and Instagram.  In the Facebook profile with the URL "Devan B. OWENS," the "Intro" states that OWENS lives in Houston, Texas, and is from Milwaukee, Wisconsin.

46.     An open search was conducted through a law enforcement database and Wisconsin DOT records and an individual was located and identified as Devan S. OWENS M/B

XX/XX/1994. After reviewing the DOT photo, it appeared the DOT photo for OWENS is the same person observed in the profile pictures for Instagram, Facebook, and CashApp. The DOT records also indicate that OWENS moved out of state with a notation stating that OWENS "moved to Texas on 10/14/22." A check of Texas DOT records was conducted and shows that OWENS holds a valid driver license with an address of 1714 Castlerock Drive, Houston, Texas. The records do not indicate when the Texas license was issued.

47. Case agents reviewed OWENS criminal history, which indicated that OWENS is currently on probation for a Milwaukee County Case 2017CF005253. OWENS was charged with Manufacture/Deliver Cocaine and Conspiracy to Commit. On June 14, 2018, OWENS was sentenced to 48 months in prison and was released on May 24, 2022, to extended supervision.

48. Case agents reviewed the court authorized electronic surveillance associated with the ADTO's members, which initially had the only contact with OWENS's telephone **713-281-2632** on November 28, 2022, consisting of the 16 contacts between MERIWETHER and OWENS's telephone **713-281-2632**. Case agents observed additional contacts between OWENS's telephone **713-281-2632** and ADTO members during known trips ADTO members took to Texas to obtain controlled substances.

49. Case agents reviewed the mapping of the area where MERIWETHER was stationary for several hours in the Houston, Texas area on November 28, 2022. The records indicated that OWENS's address on Castlerock Driver is in the vicinity and within the radius of MERIWETHER's telephone 414-999-6172 during the time frame MERIWETHER was stationary.

50. Case agents also reviewed one of the multiple public Facebook accounts for FRANKLIN, identified as "Trellbeen GettinTwoit" that connected to OWENS. On December 7, 2020, there was a post stating "Trellbeen GettinTwoit is with Devan Stevens" with the caption

"Free bro." Based on case agents' investigation into OWENS, there is a connection to between FRANKLIN, MERIWETHER, and OWENS.

51. OWENS had a previous address in Milwaukee identified as 5953 North 63rd Street #1, Milwaukee, Wisconsin according to court records. In July, August, and September 2022, MERIWETHER's cellphone was known to ping in this area but MERIWETHER or his vehicle were never located.

### c. December 2022 Trip to Texas by MERIWETHER and FRANKLIN

52. Following the December 6, 2022, transaction, case agents reviewed court authorized electronic surveillance. On December 7, 2022, MERIWETHER's telephone 414-999-6172 returned to the Evansville, IN area. MERIWETHER's telephone 414-999-6172 remained in the Evansville, IN area until the evening of December 10, 2022, when cellular phone records showed MERIWETHER's telephone 414-999-6172 traveling southwest and eventually leading to the Houston, Texas area.

53. Court authorized electronic surveillance for FRANKLIN's telephone 414-416-0868 supported the belief that FRANKLIN was also present with MERIWETHER. During the investigation it is believed that FRANKLIN is the individual who has sources of large quantities of illegal narcotics in Texas. As noted below, FRANKLIN has a connection to Devan S. OWENS, who had numerous contacts with the ADTO. Further, based on the court authorized electronic surveillance between November 27, 2022, to November 29, 2022, it appeared FRANKLIN and MERIWTHER met with OWENS during their November trip to the Houston, Texas.

54. Early morning on December 11, 2022, MERIWETHER's telephone 414-999-6172 and FRANKLIN's telephone arrived in the Houston, Texas. Case agents observed several contacts with OWENS' telephone **713-281-2632** and 414-254-8676, which was a number used that

Page 17

appeared to had been used by FRANKLIN during the investigation. Between December 9, 2022, and December 12, 2022, there were a total of 24 contacts between 414-254-8676 and OWENS' telephone **713-281-2632**.

55.     On December 11, 2022, MERIWETHER and FRANKLIN traveled to the Houston, Texas area. During this time, MERIWETHER posted on his Instagram several times.

56.     On December 11, 2022, MERIWETHER posted "Houston where's the za." Based on my training and experience, I know "za" is a reference to the marijuana. Also on December 11, 2022, MERIWETEHR posted a video showing the monitor screen on the dashboard of his vehicle which showed a GPS location. The indicator, which was a blue dot, showed a location in Houston. The screen then panned over to the right side of the operator of the vehicle and there was a handgun with a tan extended magazine visible. The screen then panned over to the center console area where there were several stacks of US Currency on top of the console. This video and the electronic surveillance were consistent with MERIWETHER's statements made to CS and the UC on December 6, 2022, that he was returning to Texas to pick up black tar heroin.

57.     In the late evening hours of December 11, 2022, electronic surveillance of MERIWETHER'S telephone 414-999-6172   indicated he had departed the Houston, Texas area and was traveling in a Northeast direction. MERIWETHER continued to travel in that direction, eventually stopping in the Evansville, Indiana area in the early morning hours of December 12, 2022. MERIWETHER remained in the Indiana area, traveling to multiple locations before heading north late in the afternoon of December 12, 2022. Based on the electronic surveillance, case agents believed that MERIWETHER was traveling to Wisconsin.

58.     Case agents reviewed the earlier mentioned Instagram videos, and it appeared the interior portion of the vehicle was not consistent with a Chevy Equinox previously used by

MERIWETHER. Case agents called Enterprise Security and learned that the Chevy Equinox, Kansas license plate R008676 had been returned to Enterprise. Enterprise provided information that the same individual, identified as Sirperriyawn A. HAILEY-HURTZ (DOB XX/XX/1999), who had rented the Equinox and other rental vehicles operated by MERIWETHER, had rented a new vehicle on December 9, 2022. The new vehicle was identified as a 2023 Toyota Highlander with Florida license plate GVZU44, VIN 5TDGZRAHXMS516494 (Highlander).

59. Case agents conducted surveillance in an attempt to locate MERIWETHER as he returned to Wisconsin. On December 12, 2022, at approximately 9:20 pm case agents observed the Highlander traveling over 100 mph northbound on I-94 in the area of Hwy 20 in Kenosha County. Case agents attempted to follow the Highlander as it traveled at a high rate and weaved in and out of traffic. The Highlander exited on Holt Avenue, Milwaukee, WI, where case agents lost the observation of the Highlander.

60. Case agents continued to monitor the court authorized electronic surveillance of MERIWETHER's telephone 414-999-6172. Case agents observed that MERIWETHER had traveled north, possibly along 6th Street in Milwaukee, Wisconsin. Case agents had set up a surveillance team at the residence located at 5146 North 60th Street, Milwaukee, WI, where the December 6, 2022, transaction took place. At approximately 10:00 pm case agents observed the Highlander pull into the driveway of 5146 North 60th Street. Case agents observed MERIWETHER exit the driver's seat. MERIWETHER had multiple bags which he then gave to an unknown black male who was standing on a porch located on the east side of the residence. The two communicated for a short period of time. MERIWETHER got back into the Highlander and left the area.

61.     The Highlander then traveled to a Clarke gas station located at 6028 West Fond Du Lac Avenue, Milwaukee, Wisconsin at 10:13 pm.  The Highlander then exited the lot and traveled to the Diamond Inn Motel located at 6222 West Fond Du Lac Avenue, Milwaukee, Wisconsin. The Highlander pulled over in front of the motel and FRANKLIN and black female exited. FRANKLIN and the black female retrieved multiple backpacks and entered the motel lobby.  They used the stairs to go to the second floor before case agents lost sight of them.  MERIWETHER remained inside the Highlander, until a short time later when he began traveling northbound on Fond Du Lac Avenue until he turned onto Armitage Road and parked the Highlander. MERIWETHER was observed by investigators exiting the Highlander and retrieving a bag from the rear of the Highlander.  MERIWETHER then entered the driver's seat and departing the area in the Highlander.  Case agents continued following MERIWETHER until they lost sight of him.

62.     At 10:35 p.m. on December 12, 2022, case agents observed the Highlander return to 5146 North 60th Street.  The Highlander was parked in the driveway, and MERIWETHER was observed exiting the Highlander and entering the residence.  A short time later a silver Ford Escape with Wisconsin license plate 750-AZH pulled into the driveway and an unidentified black male met with MERIWETHER.  At 10:45 pm, unknown male entered the Escape and left the residence. Case agents conducted surveillance on the unknown male in an attempt to identify him without success.  Case agents later determined that the vehicle registration was no longer valid and was not associated with any vehicle currently.

### d.  January 2023 Trip to Texas by FRANKLIN and BROWN

63.     On December 27, 2022, MERIWETHER was arrested in Indiana after a lengthy vehicle pursuit with Indiana state law enforcement.  Case agents learned from law enforcement in Indiana that MERIWETHER was in possession of approximately one pound of heroin, half of

Page 20

pound of methamphetamine, and a quarter of pound cocaine. The narcotics were located in a brown Louis Vuitton bag, which MERIWETHER was in possession of when he exited his vehicle and attempted to flee on foot at the conclusion of the vehicle pursuit. During a search of MERIWETHER's vehicle, law enforcement located two digital scales with a white powdery residue on them, suspected marijuana, several "small diamonds, and two cell phones (iPhones), one of which was linked to the vehicles GPS system showing the vehicle was enroute to an address in Evansville, Indiana. MERIWETHER was subsequently charged in Vermillion County with 16 counts related to the vehicle pursuit and possession of narcotics and paraphernalia. The charges included possession with intent to deliver heroin, possession with intent to deliver methamphetamine, and possession with intent to deliver cocaine. MERIWETHER remained in custody at Vermillion County Jail in Indiana.

64.     Following MERIWETHER's arrest, CS and UC arranged a controlled buy with FRANKLIN and Laron N. KING.

65.     On January 17, 2023, CS contacted FRANKLIN's telephone 414-254-8676 to discuss an anticipated transaction where CS and the UC intended on purchasing 50 grams of suspected heroin from FRANKLIN and possibly a firearm. CS and the UC were also going to meet with KING either during the transaction with FRANKLIN or directly after the transaction with FRANKLIN, to purchase one or two Glock auto-sear switch devices from KING. During the conversation FRANKLIN informed CS that he was still in Texas picking up the "tar." Based on my training, experience, and investigation into the ADTO, I am aware that FRANKLIN and MERIWETHER are known to use black tar heroin to mix with fentanyl and to obtain the controlled substances from FRANKLIN's drug source in Texas.

66.     Case agents were monitoring recorded jail calls/texts that MERIWETHER was making from the Vermillion County Jail.  MERIWETHER was in contact with FRANKLIN and BROWN.  MERIWETHER was in contact with FRANKLIN, calling FRANKLIN's telephone 414-254-8676.  MERIWETHER was contacting BROWN by calling BROWN's telephone number 414-484-6089.  During these conversations BROWN and FRANKLIN alluded to being on a trip to Houston.  On January 16, 2023, at 12:13 p.m. BROWN's telephone 414-484-6089 sent MERIWETHER a text message stating "We in Houston in 2 hours."  Case agent were also monitoring court authorized electronic surveillance of FRANKLIN's telephone414-254-8676 and observed that 414-254-8676 was in the Texas area.  Case agents also observed publicly viewable Facebook "Stories," which are short videos people can post on their Facebook account, posted by BROWN on her Facebook account during this same time.  In the videos BROWN puts captions consistent with her being in Houston, Texas.  Also, in the videos a Jeep emblem is observed on the steering column which is consistent with the information that FRANKLIN is known to operate the black Jeep registered to BROWN.  Case agent also reviewed law enforcement camera systems and found that BROWN's Jeep with Wisconsin license plate ARL-7820 was observed on January 16, 2023, in the Houston area.

67.     On January 18, 2023, at 1:32 p.m. FRANKLIN's telephone 414-254-8676 sent CS a message stating "Lmk when utyrna meet bro I'm back."  CS and case agents understood this to mean FRANKLIN was back in the Milwaukee area and was ready to complete the transaction with CS.   On January 19, 2023, at 10:16 a.m., CS and the UC met with FRANKLIN in Milwaukee, Wisconsin.   FRANKLIN provided CS with 51.6 grams of heroin, which tested positive for fentanyl.  FRANKLIN provided the UC with a firearm.

### D.  SURVEILLANCE OF ADTO

68.     Throughout the investigation into the ADTO, case agents obtained numerous court authorized electronic surveillance for members of the ADTO's cellphones, including OWENS's telephone **713-281-2632**.  The review of the court authorized electronic surveillance supported the ADTO working together to distribute controlled substances and firearms and assisted case agents in identifying other members of the ADTO and locations used by or associated with the ADTO

69.     On October 7, 2022, Honorable Judge Stephen C. Dries authorized a warrant for cellular telephone assigned call number 414-676-0097 (Alexy ROMERO's telephone), which was served on the service provider.

70.     On November 4, 2022, Honorable Judge Stephen C. Dries authorized an extension for the warrant for cellular telephone assigned call number 414-676-0097 (ROMERO's telephone), which was served on the service provider. ROMERO dropped his phone shortly after this extension was served on the services provider.

71.     On December 2, 2022, Honorable Judge William E. Duffin authorized a warrant for cellular telephone assigned call number **713-281-2632** (OWENS's telephone), which was served on the service provider.

72.     On December 29, 2022, Honorable Judge William E. Duffin authorized an extension for the warrant for cellular telephone assigned call number **713-281-2632** (OWENS's telephone), which was served on the service provider.

73.     On January 31, 2023, Honorable Judge Nancy Joseph authorized a warrant for cellular telephone assigned call number **713-281-2632** (OWENS's telephone) and 414-519-2009, which was served on the service providers.

74.     On March 1, 2023, Honorable Judge Nancy Joseph authorized an extension for the

Page 23

warrant for cellular telephone assigned call number **713-281-2632** (OWENS's telephone) and 414-519-2009, which was served on the service providers.

75.     Case agents has used the court-authorized electronic surveillance of the ADTO's members, which supports information provided from CS, UC and physical surveillance which demonstrates the continual ongoing nature of this ADTO, some of which has been discussed above.

### c. Electronic Surveillance Between November 30, 2022, to December 27, 2022

76.     While reviewing the involvement of number 414-254-8676, a number associate with FRANKLIN, case agents learned that there was a significant change in the calls that were incoming and outgoing with the 414-254-8676 line, specifically with calls to OWENS's telephone **713-281-2632**.  Case agents then learned that 414-254-8676 was ported from US Cellular to T-Mobile in early December 2022.  Following the porting of 414-254-8676 to T-Mobile, case agents no longer obtained electronic surveillance for the number.  Further, during this change, the subscriber's name changed to "Travon Martin."  During the review of FRANKLIN's old number, 414-412-6719 phone extraction, case agents observed that FRANKLIN used the name "Travon Martin" for his email.  Case agents also observed a decrease in FRANKLIN's other telephone 414-416-0868 being used.

77.     Case agents reviewed call detail records for FRANKIN's telephone 414-254-8676. Between November 29, 2022, and December 27, 2022, case agents observed that FRANKIN's telephone 414-254-8676 had 61 contacts with OWENS's telephone **713-281-2632**, 104 contacts with MERIWETHER's telephone 414-999-6172, eight contacts with RODRIGUEZ-PEREZ's telephone 414-426-0464, and one contact with a number previously utilized by Alexy ROMERO, 414-676-0097.

Page 24

**d.  Electronic Surveillance Between December 28, 2022, to January 30, 2023**

78.     Case agents continued to review court authorized electronic of FRANKLIN's telephone 414-254-8676 during his trip to Texas in January 2023.  Case agents observed that on January 16, 2023, through January 18, 2023, FRANKLIN traveled to Houston, Texas and made contact with OWENS's telephone **713-281-2632**. This was similar conduct that case agents observed when MERIWETHER and FRANKLIN traveled to Texas and contacted OWENS' telephone **713-281-2632** in December 2022, as previously described.

79.     Case agents observed that FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** were active between January 16, 2023, through January 28, 2023, and both FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** indicated being in the Houston area.  Both FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** were in contact multiple times with each other during this same time also.  For example, on January 17, 2023, at approximately 4:40 pm FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** were in contact.  Then at 4:59 pm, FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** plotted to the same general vicinity.  Then at 5:23 pm, FRANKLIN's telephone 414-254-8676 and OWENS's telephone **713-281-2632** were in contact again.  Shortly after this overlap in location, FRANKLIN's telephone 414-254-8676 began to travel north out of the Houston area and ultimately back to Milwaukee, Wisconsin.  Based on review of FRANKLIN's telephone 414-254-8676  and OWENS's telephone **713-281-2632** and statements made by FRANKLIN to CS, the information is consistent with FRANKLIN and OWENS possibly meeting in person to obtain additional controlled substances. As outlined previously, FRANKLIN indicated to CS that he (FRANKLIN) was waiting to pick up the "tar heroin" before returning to Wisconsin.  Immediately after FRANKLIN's telephone 414-

Page 25

254-8676 and OWENS's telephone **713-281-2632** were in contact and appeared to be overlapping with each other on January 17, 2023, FRANKLIN's telephone 414-254-8676 then began traveling back to Wisconsin.

80.    Case agents reviewed the contact frequency report for the number associated with FRANKLIN's telephone 414-254-8676 from December 25, 2022, through January 25, 2023. FRANKLIN's telephone 414-254-8676 has had 93 contacts with OWENS's telephone **713-281-2632**.

   e.    **Contact between the MERWITHER, FRANKLIN, OWENS and the UC, and surveillance between January 31, 2023 and February 26, 2023.**

81.    Case agents reviewed call detail records from January 31, 2023 to February 22, 2023 of OWENS's telephone **713-281-2632**. Case agents observed OWENS's telephone **713-281-2632** and FRANKLIN' s telephone number 414-519-2009 at 11 contacts during this time. Case agents also observed OWENS's telephone **713-281-2632** was also in contact with FRANKLIN's telephone 414-254-8676. OWENS was also in contact with three different international numbers identified as +90-0080006002, +90-0060005028 a, and +90-0070004375. Based on my training and experience, I am aware that controlled substance often come into the United States through boarding countries, like Mexico.

82.    Between February 7, 2023 and February 9, 2023, case agents conducted physical surveillance of OWENS in the Houston, Texas area. Case agents learned through recorded jail calls between MERIWETHER and FRANKLIN using 414-519-2009, that FRANKLIN was possibly going to travel to Texas during this time period to meet with OWENS. During the time case agents were in Texas, they confirmed that OWENS works at a Hertz Rental Car location, at the George Bush International Airport. Case agents also were able to confirm OWENS was

residing with a female identified as Jatavia BENNETT-ROBINSON. Based on surveillance, OWENS and BENNETT-ROBINSON appeared to reside at 1714 Castlerock Drive, Houston, Texas, which is a listed address for OWENS on his driver's license.

83. On February 7, 2023, OWENS was observed traveling to an apartment complex located at 15301 Northwest Freeway, Houston, Texas. This address is significant after reviewing previous court authorized GPS data from MERIWETHER's vehicle and FRANKLIN's Jeep, along with court authorize electronic surveillance of MERIWETHER's and FRANKLIN's telephones. Data placed both MERIWETHER and FRANKLIN in the general location of 15301 Northwest Freeway, Houston, Texas during MERIWETHER's and FRANKLIN's trips to obtain suspected controlled substances. Case agents were unable to confirm where OWENS went after entering the complex, but later learned that BENNETT-ROBINSON was a listed tenant in apartment 101.

84. On February 24, 2023, the UC and FRANKLIN, using telephone number 414-519-2009, arranged an upcoming controlled transaction for at least one firearm and some cocaine.

**f. Contact between OWENS and ADTO members between February 27, 2023 to March 28, 2023.**

85. Case agents reviewed call detail records from February 27, 2023 to March 28, 2023 of OWENS's telephone **713-281-2632**. Case agents observed OWENS's telephone **713-281-2632** and contacted Kemont BOYD's telephone 414-731-8317 (another member of the ADTO further described below), a total of 8 times between March 14, 2023 and March 29, 2023. The last contact OWENS's telephone **713-281-2632** had with BOYD's telephone 414-731-8317 was the day after FRANKLIN's arrest and two days after the homicide of RODRIGUEZ-PEREZ.

### E. HOMICIDE OF RODRIGUEZ-PEREZ, ARREST OF FRANKLIN AND BROWN AND SEARCHES

86.     On the morning of March 28, 2023, case agents learned that Daniel RODRIGUEZ-PEREZ ("RICO"), a member of the ADTO who had provided CS with controlled substances during two controlled buys, had been shot and killed on March 27, 2023, at 7:43 pm. Case agents are aware that RODRIGUEZ-PEREZ was a high value target in the MERIWETHER ADTO and ongoing surveillance was being conducted on RODRIGUEZ-PEREZ, including a pole camera that had been set up at his known residence located at 7028 35th Avenue, Kenosha, Wisconsin.

87.     Case agents met with detectives from the Milwaukee Police Department (MPD) regarding the homicide of RODRIGUEZ-PEREZ. Detectives briefed case agents on the information that was learned during the initial homicide investigation. The homicide occurred at 3122 North 21st Street (lower unit), Milwaukee, Wisconsin. This is the residence of Shannone BROWN, Tasha BROWN's sister. At 7:43 pm, RODRIGUEZ-PEREZ exited the front door of the residence and was talking on a cell phone when he was shot multiple times and was declared deceased on the scene by medical personnel. There was a witness to the shooting, who was identified as M.N. M.N. is known to case agents as the current girlfriend of RODRIGUEZ-PEREZ and during the investigation case agents determined that M.N. lived with RODRIGUEZ-PEREZ at the residence located at 7028 35th Avenue, Kenosha, Wisconsin. During the homicide investigation, RODRIGUEZ-PEREZ's girlfriend, M.N. told law enforcement that FRANKLIN had been threatening RODRIGUEZ-PEREZ prior to his homicide on March 27, 2023.

88.     Case agents learned that a search warrant was conducted at the 3122 North 21st Street after the homicide. During the search conducted MPD located a handgun, an extended magazine, a drum magazine, loose ammunition, a digital scale, 357.5 grams of a clear glass like

Page 28

substance testing positive for methamphetamine, multiple assorted bottles containing a liquid believed to be "Lean" which in all likelihood contains Promethazine.

89.     Based on the investigation into the ADTO, court authorized electronic surveillance, court authorized GPS data of T. BROWN's Jeep, and jail calls, law enforcement believed FRANKLIN was involved in RODRIGUEZ-PEREZ's homicide.

90.     On March 28, 2023, FRANKLIN and T. BROWN were arrested.  Also on March 28, 2023, case agents executed five search warrants for locations associated with the ADTO including 3907 North 24th Street, Milwaukee, Wisconsin, residence of BROWN and FRANKLIN; 3716 West North Avenue, Milwaukee, Wisconsin, a business used by the ADTO; Economy Inn, Room 118, 7284 West Appleton Avenue, Milwaukee, Wisconsin, hotel room used by BROWN and FRANKLIN; 7028 35th Avenue, Kenosha, Wisconsin 53142, RODRIGUEZ-PEREZ's residence; and SmartStop Self Storage Unit 1032 located at 3420 West Capitol Drive, Milwaukee, Wisconsin, BROWN's storage unit.

91.     At 3907 North 24th Street, Milwaukee, Wisconsin, residence of BROWN and FRANKLIN, case agents noted the residence appeared to be vacant, though several undercover controlled buys occurred just outside this location.  Case agent did not locate anything of value at this location. At 3716 West North Avenue, Milwaukee, Wisconsin, a business used by the ADTO, case agent did not locate anything of value. At Economy Inn, Room 118, 7284 West Appleton Avenue, Milwaukee, Wisconsin, hotel room used by BROWN and FRANKLIN, case agents did not locate anything of value.  It appeared BROWN and FRANKLIN checked out that day.

92.     At 7028 35th Avenue, Kenosha, Wisconsin 53142, RODRIGUEZ-PEREZ's residence, case agents located a firearm that was possessed by RODRIGUEZ-PEREZ's girlfriend's brother, D.N.  D.N. told case agents that, with respect to RODRIGUEZ-PEREZ's homicide,

Page 29

RODRIGUEZ-PEREZ's (Rico's) "people were saying that Rico stole from them." Based upon their training, experience, and the investigation to date, case agents believe that Rico's "people" referred to FRANKLIN, who was identified as a source of supply for the DTO, and that when D.N. referred to Rico "stealing" from his "people," he was referring to Rico stealing either drugs or drug proceeds from other members of the DTO, including FRANKLIN.

93.     At SmartStop Self Storage Unit 1032 located at 3420 West Capitol Drive, Milwaukee, Wisconsin, BROWN's storage unit, case agents located an AK long gun, kilogram wrappers, and a blender with suspected drug residue.

94.     MPD Homicide detectives located two firearms with Glock auto-sear devices at 2028 North 39th Street, Milwaukee, Wisconsin during a consent search on March 28, 2023. 2028 North 39th Street, Milwaukee, Wisconsin was occupied by Montree SHAW, Frank SHAW's brother, and his girlfriend Amber HUBANKS. FRANKLIN was present at the residence on March 28, 2023. Consent to search the residence was obtained by MPD and along with Special Agents with the ATF. During the search two handguns were located in a bag and both HUBANKS and M. SHAW denied knowledge of the bag. The firearms were collected for evidentiary purposes and later tested. One of the firearms, a Glock 17, with an attached Green laser light and a Glock Auto-Sear device installed on it, matched the firearm utilized in a shooting which occurred at 3122 North 21st Street, on February 10, 2023 where a vehicle belonging to RODRIGUEZ-PEREZ was shot multiple times. The firearm also matched the firearm used in the homicide of RODRIGUEZ-PEREZ on March 27, 2023. Based on statements made by M. SHAW and HUBANKS, along with observations by member of the surveillance team, it is believed that FRANKLIN left the guns at the residence prior to his departure shortly before his arrest.

95.     On March 28, 2023, case agents also executed a search warrant on T. BROWN's Jeep. Case agents located the following items: two cellphones, a black Adidas bag, an item believed to be a Glock Auto-Sear Switch but later determined to be a back plate to a Glock handgun, a digital scale, 5.3 grams of a substance testing positive for cocaine, 41.4 grams of a black tar like substance testing positive for heroin, and 57.5 grams of a substance testing positive for fentanyl.

96.     Case agents conducted a court authorized forensic extraction of FRANKLIN's telephone 414-519-2009, which was located on March 28, 2023. Case agents observed that all but 4 communications (24 contacts) on March 28, 2023, between FRANKLIN and Frank SHAW's telephone 414-803-5270 had been deleted.

97.     Following his arrest on March 29, 2023, FRANKLIN provided a mirandized statement to MPD. FRANKLIN provided MPD a phone number of 414-484-6089, which case agents had previously identified this number as a number for Tasha BROWN. FRANKLIN stated that he knew "Rico" (RODRIGUEZ-PEREZ) and that was his "boy." FRANKLIN stated that he met "Rico" through "Rico's Uncle "Alex." Based on the investigation into the ADTO and call detail records, case agents believe FRANKLIN was referring to Alexy ROMERO.

98.     FRANKLIN admitted that he and "Rico" sold drug together and sometimes "Rico" would sell on his own. FRANKLIN stated that he believed the "MP13" was trying to "kill" him and "Rico." This allegedly stemmed over a $100,000.00 drug debt. FRANKLIN elaborated further indicating that "Rico had borrowed some drugs" and some "bullshit happened" and "Rico" allegedly did not pay back the supplier. FRANKLIN stated that this caused him to "branch away" from "Rico," therefore losing his connection to his drug supply. FRANKLIN also provided a partial phone number and Facebook account for RODRIGUEZ-PEREZ. Based on the investigation into RODRIGUEZ-PEREZ's homicide, specifically witness statements, electronic surveillance, GPS

location data, and the firearm located used in the homicide, case agents believed FRANKLIN was being dishonest about the murder.

99.     FRANKLIN admitted that he did make two stops on March 27, 2023 between 7:00 pm and 8:00 pm.  FRANKLIN stated that he sold drugs at two different locations, identified as North 38th and Lisbon and North 39th and Villard in Milwaukee, Wisconsin.  FRANKLIN stated that they drugs were locate inside the Jeep Cherokee were his and stated that he was going to "consume them" according to the report.  FRANKLIN identified the "red phone" located inside the Jeep as his with an assigned number of 414-254-8676 and stated the other phone in the car was for his "kids."  FRANKLIN stated that the residence located at 3122 North 21st Street is a "drop house" for drugs, meaning that there are large amounts of illegal narcotics at the residence that can be purchased.

100.    Case Agents learned that the MPD interviewed several people for the homicide investigation.  One of the individuals interviewed on March 27, 2023 was Monalease BROWN, identified as the sister of Tasha BROWN and Shannone BROWN.  M. BROWN stated that she knew Daniel RODRIGUEZ-PEREZ as "Rico" and was aware that RODRIGUEZ-PEREZ was from Texas and is known to "sell drugs."  M. BROWN also indicated that RODRIGUEZ-PEREZ had "connections to drug cartels in Texas."

101.    M. BROWN indicated that she known Dontrell FRANKLIN and stated that she was aware that FRANKIN is dating Tasha BROWN and that FRANKIN is a "drug dealer."  M. BROWN provided information that there was a dispute over seized funds and bail money, resulting from the arrest of FRANKLIN in August 2022 and subsequent posting of his $20,000 cash bond. M. BROWN then alleged that FRANKLIN "shot up" her residence and this incident is still under investigation.  FRANKLIN forced members of her family to pay him (FRANKLIN) an undisclosed

Page 32

amount of money to leave them alone. M. BROWN stated that FRANKLIN was continuing to threaten harm to RODRIGUEZ-PEREZ.

102.    On March 31, 2023, M. BROWN reached out to MPD again.  M. BROWN stated that she had information related to the incident.  She stated that her brother, Frank SHAW, had been calling her off and on throughout the day on March 30, 2023.  M.BROWN provided  SHAW's telephone 414-803-5270.  M. BROWN stated that she received a specific call on March 30, 2023 between 5:00 pm and 5:30 pm.  During this call SHAW informed M. BROWN that he (SHAW) had heard FRANKLIN was a confidential informant.  SHAW continued stating "Let that N**** know if he tell that I drove him, I'm telling on all the murders that he and Rico (RODRIGUEZ-PEREZ) did and he and Juan (MERIWETHER) did.  SHAW also told M. BROWN that he "told Rico to come outside because the weed man was outside."  M. BROWN stated that she did not know if SHAW had called RODRIGUEZ-PEREZ via phone number of Facebook.

103.    On April 8, 2023, Shannone BROWN provided a Mirandize interview to MPD.  S. BROWN indicated that RODRIGUEZ-PEREZ was involved in the trafficking or illegal narcotics, specifically "boy and girl," which based on my training and experience, I know to be slang terms for heroin and cocaine.  S. BROWN stated that there is another individual, who she identified as Qian COLLINS who is involved with the sale of illegal narcotics with RODRIGUEZ-PEREZ.

104.    S. BROWN stated that the FRANKLIN was arrested in August 2022 for charges related to domestic abuse case where Tasha BROWN was the victim. During that arrest, FRANKLIN was arrested with $35,000.00 in his possession which S. BROWN stated was a mix of FRANKLIN and RODRIGUEZ-PEREZ's.  After his arrest, FRANKLIN was given a $20,000.00 cash bail which was paid by members of the ADTO.  S. BROWN indicated RODRIGUEZ-PEREZ

Page 33

provide $9,000.00, Qian COLLINS provided $7,000.00, Tasha BROWN provided $1,000.00, and MERIWETHER paid an undisclosed sum.

105.     Case agents review the criminal history for Qian L. COLLINS DOB XX/XX1994. COLLINS has prior convictions for a misdemeanor possess/illegally obtained prescription in Milwaukee County case 2013CF527 and felony possession with intent to deliver heroin in Milwaukee County Case 2013CF4402.

106.     Case agents reviewed the phone extraction of RODRIGUEZ-PEREZ, following his homicide on March 27, 2023.   In RODRIGUEZ-PEREZ's cellphone he had a contact for "Qian"/"Yon" with telephone number 414-614-5396.   Case agent searched on CashApp the telephone 414-614-5396, which was connected to an account for "Qian COLLINS."

### F.  INVESTIGATION OF "ALEX" (Alexy ROMERO)

107.     On August 2, 2022, Dontrell FRANKLIN was arrested by the United States Marshals Task Force (USMTF) based on several outstanding arrest warrants from an unrelated incident.   At the times of his arrested, he was in possession of two cellphones.   Case agents obtained a state search warrant to conduct a forensic download of download of both cell phones.

108.     Law enforcement identified telephone number a 414-412-6719 as one of the devices.   On 414-412-6719 there was communication with a subject identified in the contact list as "Alex" with a phone number of 414-676-0097.   Case agent later identified "Alex" as Alexy ROMERO during a traffic stop, which is further described in this affidavit.   During the review of text messages, there was content on July 8, 2022, were FRANKLIN and another individual, later identified through Wisconsin Department of Corrections (DOC) records as Antonio E. HOWARD, traveled to a location identified as a Sam's Club located at 101 W. Oakton Street, Des Plaines, IL. Law enforcement searched through the DOC database for telephone number 414-501-9512 and

Page 34

this number was provided by HOWARD as his telephone number.

109. The reason for traveling to that location was for FRANKLIN and HOWARD to pick up what was believed to be three pounds of marijuana from "Alex" (ROMERO). This belief was substantiated by reviewing numerous text message communications between FRANKLIN and ROMERO. The conversation centered around FRANKLIN purchasing narcotics from ROMERO and began on July 2, 2022, and continued through July 8, 2022, when FRANKLIN traveled to Des Plaines, IL. During the conversation, FRANKLIN indicated that he would like to purchase cocaine rather than marijuana. Based on my training, experience, and investigation into this ADTO and messages between FRANKLIN and ROMERO, when the two spoke regarding prices of what is believed to be kilograms of cocaine FRANKLIN argued with ROMERO, stating he gets better prices when he travels to Texas.

110. Here is a summary of FRANKLIN's and ROMERO's (414-676-0097) conversation from July 2, 2022. FRANKLIN inquired with ROMERO as to the status of his narcotics stating, "my people got money ready". The conversation continued and ROMERO indicated that he, "got the grass" and that he "need(ed) to cash out 3". FRANKLIN responded by asking, "Ok so what's going on wit gurl they on my heals". It appears ROMERO continued to try to sell FRANKLIN marijuana however FRANKLIN again stated, "Bro Im cool on the weed I rather spend money on gurl". FRANKLIN stated that he had $50,000 and inquired as to if he could purchase kilograms of cocaine for $19,000 each. ROMERO and FRANKLIN seem to disagree regarding prices and FRANKLIN stated, "Bro u on some bullshit I'm just bout to go Texas", indicating that he has a source of supply for cocaine in the state of Texas. Ultimately, FRANKLIN agreed to meet ROMERO to purchase three pounds of marijuana for an unknown price. ROMERO directed FRANKLIN to 101 W Oakton St, Des Plaines, IL 60018. Based on messages between the two,

FRANKLIN subsequently drove to that address however after waiting several hours for ROMERO to arrive, leaves without meeting him. I am aware that the address lists to a Sam's Club warehouse retails store. Based on my training and experience he knows that the term "grass" is commonly used to refer to marijuana and the term "gurl" is commonly used to refer to cocaine.

111.    On the morning of July 8, 2022, FRANKLIN texted the contact "Smoke 61st Marion", phone number 414-501-9512, "puking up gotta hit road". The two subsequently traveled to the Sam's Club warehouse retail store in Des Plaines Illinois. Through the DOC database, "Smoke 61st Marion" was identified as a nickname for HOWARD. Law enforcement also determined HOWARD resides near 61st and Marion.

112.    On July 13, 2022, ROMERO and FRANKLIN agreed to meet. FRANKLIN sent the address "29 auer at 6" after ROMERO, 414-676-0097, sent messages at 2:14pm stating "So we can plan something" and "I have things lineing in LA".

113.    On July 18, 2022, FRANKLIN, and ROMERO, 414-676-0097, discussed meeting again and FRANKLIN sent ROMERO, 414-676-0097, a message stating 3265 North 29th Street, Milwaukee, Wisconsin, which was previously identified as the "stash house" of the ADTO during the investigation. Later that evening ROMERO, 414-676-0097, sent FRANKLIN a message stating "come over" and provided FRANKLIN with a location of "Forest Home and Lincoln." On July 18, 2022, at 6:35pm ROMERO, 414-676-0097, sent a message to FRANKLIN stating "Yo for the girl the number is 245 in there ready for Thursday." FRANKLIN responded, "Bro if they can't throw me 1 on top of the 11 I buy cause they taxing ima just hit the road for 21500 a book." Based on my training, experience, and investigation into the ADTO, this communication is consistent with the parties communicating about amounts of controlled substances and payments for the controlled substance. I know the term "book" often is referred to be ADTO in relation to

Page 36

kilograms of controlled substances. Further the parties discussing the term "taxing", which I am aware relates to the additional amount a drug source or ADTO will charge in order to obtain a profit on the controlled substances during the sales.

114.     While reviewing call detail records for ROMERO's telephone 414-676-0097, the number is shown to have multiple contacts with two international numbers believed to be associated to individuals in Mexico from June 2022 through August 2022.  While reviewing those numbers, one was identified as 52-6511065056 which has been associated with money transfers originating in Phoenix, Arizona to Mexico.   There were additional calls to individuals in Indiana, Texas, Arizona, and Illinois.

115.     Contact was made with Chicago DEA Office who is investigating a cocaine distribution organization with direct Mexican Cartel ties.   One of the main targets in that investigation has a number identified as 224-538-9680.  While reviewing records from August 16, 2022, through August 30, 2022, there were 101 contacts, calls, and texts total, between the 224-538-9680 and ROMERO's telephone 414-676-0097.   It was determined that ROMERO is the second top contact for Chicago DEA target number 224-538-9680.  Chicago DEA believes that ROMERO's telephone 414-676-0097, is the main source of cocaine for their target and believes that ROMERO is an essential person of interest in their investigation.

116.     While reviewing records for contacts between ROMERO's telephone 414-676-0097, and other ADTO members' numbers, there were several which were noteworthy.  Between July 22, 2022, and October 13, 2022, there were a total of 342 contacts between ROMERO's telephone 414-676-0097 and RODRIGUEZ-PEREZ (512-940-1862).  Between July 1, 2022, and August 8, 2022, there were a total of 334 contacts between ROMERO's telephone 414-676-0097, and FRANKLIN's old number (414-412-6719).  Between August 30, 2022, and September 28,

2022, there were a total of 42 contacts between ROMERO's telephone 414-676-0097, and RODRIGUEZ-PEREZ (414-426-0464). Between July 21, 2022, and July 24, 2022, there were a total of 12 contacts between ROMERO's telephone 414-676-0097 and FRANKLIN's other possible number (414-324-5545).

117. Court authorized electronic surveillance indicated that ROMERO's telephone 414-676-0097, was located at an area on Forest Home Ave in the City of Milwaukee. This information was consistent with information learned by case agents after reviewing FRANKLIN's old telephone, 414-412-6719. ROMERO told Franklin to come by ROMERO's house and references Forest Home and Lincoln Ave along with the "Walgreen's." Additional court authorized electronic surveillance warrant allowed case agents to determined that ROMERO's telephone 414-676-0097 was located at a residence of 2242 West Forest Home Avenue, Milwaukee, Wisconsin. Electronic surveillance from October 25, 2022, captured a Black Ford F150 with Wisconsin registration RY1359 at the residence. Case agents were able to verify ROMERO's telephone 414-676-0097 was also at the area. Case agents observed a male operating the Ford F150. Additionally, electronic surveillance captured this same male and ROMERO's phone 414-676-009 traveling, consistent with ROMERO being the operator and only occupant of the Black Ford, most recently on November 1, 2022, and November 2, 2022.

118. Case agents review Wisconsin Department of Transportation (DOT) records and determined the Ford F150 is registered to Tasha BROWN, with a registered address for the vehicle being identified as 3907 North 24th Street, Milwaukee, WI. This address has been previously identified as the address for FRANKLIN and BROWN. This is also the location, the street in front of BROWN's residence, where multiple controlled transactions for fentanyl, methamphetamine, and firearms have taken place on between September 2022, and January 2023.

119.    Electronic surveillance also indicated that that ROMERO's telephone 414-676-0097 traveled to the Chicago area for a short period of time very few days and returns to the Milwaukee area.    For example, on October 15, 2022, at 3:00 p.m. ROMERO's telephone 414-676-0097 left the Milwaukee area and traveled to the Chicago area.    On October 16, 2022, ROMERO's telephone 414-676-0097 returned to the Milwaukee at 4:00 p.m.  Again, on October 18, 2022, at 6:20 p.m. ROMERO's telephone 414-676-0097 left Wisconsin and traveled to the Chicago area near the O'Hare airport arriving at 7:00 p.m.  ROMERO's telephone 414-676-0097 returned to the Milwaukee area that same evening at 7:50 p.m.  On October 20, 2022, at 8:30 p.m. ROMERO's telephone 414-676-0097 left the Milwaukee area and traveled to the Elsdon, IL area. ROMERO's telephone 414-676-0097 returned that same evening to the Milwaukee area at 11:50 pm.  Additionally, on October 31, 2022, ROMERO's telephone 414-676-0097 left the Milwaukee area at 10:30 a.m. and traveled to the Chicago downtown area.  ROMERO's telephone 414-676-0097 returned to the Milwaukee that afternoon around 2:30 p.m.

120.    Based on the information learned from the phone records, in November 2022 ROMERO was still traveling to Chicago and returning to Milwaukee several times a week and was still in connection with many of the same Chicago targets that are under investigation by the DEA in Chicago.  Additionally in November 2022, ROMERO was also operating a vehicle registered to BROWN, who is the girlfriend of FRANKLIN.  BROWN and FRANKLIN are both known to be directly involved in assisting the ADTO with transactions of controlled substances.

121.    On November 10, 2022, MPD conducted a traffic stop of ROMERO and identified him as Alexy ROMERO.  Unfortunately, the following the traffic stop, ROMERO disconnected 414-676-0097.

122. Case agents were able to identify ROMERO's new telephone number as 262-933-1492. On March 23, 2023, case agents obtained information from We Energies for the residence of 2242 West Forest Home Avenue, Milwaukee, Wisconsin. On March 1, 2023, Melissa Escobar, who is believed to be the girlfriend of Alexy ROMERO, had the utilities listed to her switched to Alexy ROMERO with telephone number 262-933-1492. Case agents obtained subscriber information for telephone 262-933-1492, but it did not have a name provided. Case agents are aware that drug traffickers will often not provide any subscriber name, a family member's name or a fake name in order to evade law enforcement. Between January 2022 and March 1, 2023, the utilities for 2242 West Forest Home Avenue, Milwaukee, Wisconsin was listed to Melissa Escobar and Alexy ROMERO with telephone number 414-588-1030.

123. Case agent review call detail records between ROMERO's telephones 414-676-0097, 414-588-1030, and 262-933-1492 and Qian COLLINS's telephone 414-614-5396. Between September 15, 2022 and November 9, 2022 COLLINS's telephone 414-614-5396 had 58 contacts with ROMERO's telephone 414-676-0097. Between October 19, 2022 and February 22, 2023 COLLINS's telephone 414-614-5396 had 180 contacts with ROMERO's telephone 414-588-1030. Between March 12, 2023 and March 28, 2023 COLLINS's telephone 414-614-5396 had four contacts with ROMERO's telephone 262-993-1492.

## G. IDENTIFICATION OF KEMONT BOYD

124. As part of the investigation into the ADTO, case agents attempted to identify other members associated with the ADTO. Through court authorized electronic surveillance and physical surveillance of the ADTO case agents identified Kemont BOYD (DOB XX/XX/1997) as a member of the ADTO.

125. Case agents identified 414-998-7220 as a number associated with BOYD when

review jail calls and texts messages of MERIWETHER.  BOYD and MERIWETHER discussed this new number and case agents recognized BOYD's voice during the calls.  Case agents observed that between October 22, 2022, to December 21, 2022, BOYD's telephone 414-998-7220 and MERIWETHER's telephone 414-999-6172 had a total of 12 contacts.  During this same time frame, BOYD's telephone 414-998-7220 and OWENS' telephone **713-281-2632** had one contact.

126.    Case agents have reviewed social media accounts of MERIWETHER and BOYD.  BOYD has multiple Instagram profiles with one been identified "richvibe_monty2x."  While reviewing the profile BOYD is observed in several photos flashing large amounts of United States currency and in possession of firearms.

127.    On November 30, 2022, BOYD post four pictures of himself where he appears to be in a hotel room.  The first picture shows BOYD holding a large amount cash and flashing what appears to be a gang sign in his other hand.  BOYD is wearing a gold-colored hat, black and gold shirt, blue jeans, and black and gold tennis shoes.  In the second picture, only the feet of BOYD are visible, but they are the same distinct shoes that BOYD is seen wearing in the first photo.  Next to the feet is a large amount of cash spread out on the floor along with one black handgun and on tan/green colored handgun. The fourth picture shows a hand holding a large amount of cash and in the background on top of a counter is the same tan/green colored handgun observed in the third photo. In the fourth photo there is a watch that is visible on the hand, and it is consistent with the same watch observed on BOYD in the first photo.

128.    On December 21, 2022, BOYD posted a short video on Instagram where it appears it was taken inside a vehicle and the camera pans to the center console where there are two black handguns located in the cup holder, with one of them having an extended magazine.  There is a time stamp of 11:50 a.m.

129.    BOYD is known convicted felon, with convictions for Armed Robbery with Threat of Force.   BOYD currently has an active felony probation warrant through the Wisconsin Department of Corrections (DOC) for absconding. Case agents have reviewed several social media videos and pictures and there is a clear connection between MERIWETHER and BOYD.

130.    On April 19, 2023 BOYD was arrested by MPD.  BOYD fled from MPD in a stolen vehicle for 2.78 mile, reaching speeds up to 100 mph in a residential area.  The vehicle pursuit ended when BOYD crashed the stolen vehicle and then fled from officers on foot.  BOYD was eventually detained and was in possession of .82 grams of crack cocaine.  BOYD was also in possession of $5,803 and officers located two cellphones in BOYD flight path following the crash. BOYD had a warrant for his arrest with Wisconsin DOC also.

## H.  FENTANYL ARREST ADDITIONAL CONTACTS WITH COLLINS

131.    Case agents learned that CS 2 was arrested in Merrillville, Indiana with several kilos of fentanyl, with possible ties to the MERIWETHER ADTO.

132.    On March 28, 2023, CS 2 provided information to a DEA TFO that CS 2 was contacted by an individual known as "Loco."  "Loco" was utilizing the phone number 786-208-2153.  "Loco" requested CS 2 to fly to Los Angeles, CA in order to deliver a large amount of illegal narcotics. CS 2 met with "Loco" and stayed in the Los Angeles for a few days before departing. "Loco" provided CS 2 with a Black Ford Flex bearing California registration 9CYF241.  "Loco" informed CS 2 that the narcotics were being stored in an aftermarket roof compartment.  CS 2 then departed traveling from California to Milwaukee.

133.    CS 2 was instructed to travel to a residence located at 9300 West Riverwoods Drive, Milwaukee, Wisconsin, which CS 2 described as an Airbnb.  CS 2 arrived on an unknown date and parked in the garage as instructed and left the residence for a short time. CS 2 returned a short time

later and took custody of the Ford Flex and departed the area. CS 2 then was instructed to travel to Cincinnati, Ohio to deliver the remaining narcotics, CS 2 was instructed to contact the number 513-568-2623 upon arriving in Cincinnati. CS 2 S stated that CS 2 did not meet or see anyone while CS 2 was in the Milwaukee area and a complete debrief of the CS is pending.

134. CS 2 information is credible and reliable, CS 2's information have been independently corroborated and verified by law enforcement, including information obtained from various public databases, physical surveillance, interviews, and telephone toll analysis. CS 2 has made statements against CS 2's penal interest related to CS 2's direct involvement in illegal activity, including the transportation of narcotics. CS 2's has a prior conviction for retail theft, prior arrests for simple domestic assault, and simple assault. CS 2 is cooperating for judicial consideration.

135. Case agents learned that the number 786-208-2153, has been in contact with COLLINS's telephone 414-614-5396, a total of 107 times between February 2, 2023 to March 28, 2023. Case Agent later learned that the 786-208-2153 line was recently deactivated after CS 2 provided information to "Loco" that the vehicle had been towed and the illegal narcotics were seized. COLLINS's telephone 414-614-5396 was the second top contact for the user of 786-208-2153.

136. Case agents were aware that COLLINS had a role in the ADTO but was unsure of his role initially. Based on interviews conducted after the death of RODRIGUEZ-PEREZ, and preliminary information of COLLINS connections to the 786-208-2153 number that set up the delivery of kilos of fentanyl, case agents believe that COLLINS may supply fentanyl to the ADTO.

137. Case agents also identified a text message in the cell phone belonging to RODRIGUEZ-PEREZ, where the address 2679 North Holton Street is shared. Case agents

identified 2679 North Holton Street, Milwaukee, Wisconsin as a cellphone store which public databases indicated is owned by Brianna Madden, COLLINS's girlfriend and mother of his child. Case agents located text messages where RODRIGUEZ-PEREZ stated the cellphone store is actually owned by COLLINS. Based on my training and experience, I am aware that drug traffickers and other engaged in illegal activities may often place legal businesses in family members' or significant other's names in an attempt to distance the legal business from the illegal conduct of a drug trafficker. There are also a total of 92 calls between COLLINS's telephone 414-614-5396 and RODRIGUEZ-PEREZ's telephone 414-807-2942 between February 2, 2023 and March 9, 2023.

138.     Case Agents reviewed call details record of COLLINS's telephone 414-614-5396, during the investigation and learned between September 23, 2022 and October 27, 2022 COLLINS's telephone 414-614-5396 contacted FRANKLIN's telephone 414-416-0868 a total of 32 times. Between January 1, 2023 and February 10, 2023 COLLINS's telephone 414-614-5396 contacted FRANKLIN's telephone 414-519-2009, a total of 20 times. Between January 14, 2023 and February 10, 2023 COLLINS's telephone 414-614-5396 contacted FRANKLIN's telephone 414-254-8676 a total of 5 times. Between December 13, 2022 to March 29, 2023 COLLINS's telephone 414-614-5396 contacted Shannone BROWN's telephone 414-551-8136 a total of 11 times. This includes six times on March 28, 2023, the day after the homicide of RODRIGUEZ-PEREZ. Between September 10, 2022 and December 9, 2022 COLLINS's telephone 414-614-5396 contacted RODRIGUEZ-PEREZ's telephone  414-426-0464 a total of 26 times. Between November 10, 2022 and March 19, 2023 COLLINS's telephone 414-614-5396 contacted RODRIGUEZ-PEREZ's telephone 414-807-2942, a total of four times. Between January 20, 2023 and January 26, 2023 COLLINS's telephone 414-614-5396 contacted RODRIGUEZ-PEREZ's

Page 44

telephone 512-940-1862 a total of four times. On March 28, 2023, the day after the homicide of RODRIGUEZ-PEREZ, COLLINS's telephone 414-614-5396 contacted a number M.N.'s telephone 262-914-4276, RODRIGUEZ-PEREZ's girlfriend, a total of two times. Around March 29, 2023, COLLINS's telephone 414-614-5396 was dropped. Case agents are attempting to determine his new telephone number.

**ADDITIONAL INFORMATION REGARDING THE ADTO'S CELL PHONES**

92.     On March 23, 2023, case agents queried "262-933-1492" via a law enforcement database, which identified the mobile carrier as US Cellular.

93.     On April 24, 2023, case agents queried "**713-281-2632**" via a law enforcement database, which identified the mobile carrier as Verizon.

94.     I believe the Target Cell Phone, whose service provider is Verizon Wireless ("Service Provider"), a wireless telephone service provider, continues to contain valuable information on this account that could be used as evidence for the possible crimes of possession of a machinegun, distribution and possession with intent to distribute controlled substances, and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846.

**III.     JURISDICTION**

95.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## IV. TECHNICAL BACKGROUND

96.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Service Provider's network or with such other reference points as may be reasonably available.

### A. Cell-Site Data

97.     In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

98.     Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of

Page 46

the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

### B. E-911 Phase II / GPS Location Data

99.     I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

100.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

101.     I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data,

Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time, or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

102.     Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

103.     Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

## C. Pen-Trap Data

104.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded

by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### D. Subscriber Information

105.    Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

106.    In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone' user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications between Alexy ROMERO, Devan OWENS, Kemont BOYD, Qian COLLINS and other identified and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether Alexy ROMERO, Devan OWENS, Kemont BOYD, Qian COLLINS and others acted-in-concert, by establishing the nature and extent of their relationship, the

existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## V.     AUTHORIZATION REQUEST

107.    Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

108.    I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

109.    I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

110.    Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R355**

1.      Records and information associated with the cellular devices assigned call numbers **713-281-2632** (referred to herein and in Attachment B as "the Target Cell Phone), that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

2.      Information about the location of **Target Cell Phone**, that is within the possession, custody, or control of Verizon Cellular.

3.      The **Target Cell Phone**.

Case 2:23-mj-00927-NJ   Filed 04/27/23   Page 59 of 63   Document 1

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2022R355**

I.      **Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from March 28, 2023, to present:

        i.  Names (including subscriber names, usernames, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Page 52

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

     iii.   Date, time, and duration of communication; and

     iv.   All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, on January 31, 2023, for such information associated with the Target Cell Phone.

    c.   Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

     i.   To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall

Page 54

compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and possession of a machinegun, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846, have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Antonio E. HOWARD, Tasha M. BROWN, Alexy ROMERO, Devan OWENS, Kemont BOYD, Qian COLLINS and other identified and unidentified subjects during the period of July 1, 2022, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.